UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUJUAN RODGERS,

        Plaintiff,

v.

COUNTY OF OAKLAND, and
OAKLAND COUNTY SHERIFF
MICHAEL BOUCHARD, in his
official capacity, DEPUTY
DEFENDANT JOHN DOES (1-6),
in their official and individual capacities,
jointly and severally,

        Defendants.

_____/

Case No. 18-cv-12832

Paul D. Borman
United States District Judge

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF NO. 6)

In this civil rights action filed under 42 U.S.C. § 1983, Plaintiff claims that he

was brutally beaten and tased on or about September 11, 2015, in an unprovoked

attack by six Oakland County deputies shortly after being transferred to the Oakland

County Jail ("OCJ") following his arrest on an open warrant for driving on a

suspended license ("DWLS").   Plaintiff alleges that prior to his release on bond on

September 14, 2015, he filed a formal complaint with the OCJ specifically detailing

the beating incident but has never been contacted regarding his complaint, which he

1

alleges was never investigated by Oakland County or Sheriff Bouchard. Defendants Oakland County and Sheriff Michael Bouchard now move to dismiss the Complaint, which alleges excessive force, arguing (1) that the claims against Sheriff Bouchard in his official capacity are duplicative of the claims against the County, and (2) that the Complaint fails to plausibly allege a municipal liability claim against Oakland County. The matter is fully briefed and the Court held a hearing on July 31, 2019. For the reasons that follow, the Defendants' motion is GRANTED IN PART AND DENIED IN PART.

## I.   BACKGROUND

### A. The Allegations of Plaintiff's Complaint[1]

Plaintiff alleges that at all times relevant to his claims he was a pretrial detainee at the Oakland County Jail ("OCJ") in Pontiac, Michigan. (Compl. ¶ 4.) Plaintiff sues the County, the individual deputies in their "individual and official capacities," and sues Sheriff Michael Bouchard, the alleged final policymaker for the Defendant Oakland County, in his official capacity only. (Compl. ¶¶ 5-6, 8.)

Plaintiff alleges that on September 10, 2015, at approximately 11:00 p.m., he was arrested without incident, booked/processed and detained at the Southfield Police

---

[1] This statement of facts is taken directly from the Plaintiff's Complaint and these allegations, and all reasonable inferences from them, are presumed true for purposes of deciding this motion to dismiss.

Department, on an open warrant for failure to appear on a DWLS (driving while license suspended) ticket. Bond was set at $500.00. Plaintiff was unable to make bond and on September 11, 2015, he was transported by Oakland County Sheriff's Department agents/officials, to the Oakland County Jail. (Compl. ¶¶ 11-12.) Once at the OCJ, and as part of the intake/booking process, Plaintiff was standing at an open window counter, filling out an intake questionnaire and answering questions posed to him by a female deputy. The female deputy inquired of Plaintiff whether he had any medical conditions that would preclude him from being confined in a cramped/crowded area with other inmates. Plaintiff indicated to the female deputy that he had been the victim of gunshots and had continuing head and back pains and could not be confined under cramped/crowded conditions. (Compl. ¶¶ 13-15.)

At this point, Plaintiff alleges, a tall, white male deputy (approximately 6'8" and perhaps Deputy Meyer(s)), interjected and yelled at the female deputy: "You don't need to cater to him!"; "He's a punk ass-bitch!"; "He don't need no special treatment!", and screaming other profanities and stating that "We gonna whoop his ass!" The female deputy apologized to Plaintiff and Plaintiff continued filling out paperwork. Out of the corner of his eye, Plaintiff could see a group of at least six deputies coming aggressively toward him as he stood at the counter. The six deputies then began to punch, kick, and stomp Plaintiff onto the ground; brutally assaulting

him over and above his pleas that he had an injured back and ignoring his screams for help. (Compl. ¶¶ 16-20.)

Plaintiff alleges that the entire incident was captured on the OCJ video monitoring system. Plaintiff alleges that the deputies struck him with closed fists and steel-toe boots repeatedly about his upper torso, back, head, face, arms, neck, and legs, causing him to suffer bruises, contusions, and abrasions. Plaintiff alleges that he did not resist or obstruct or otherwise provoke the physical attack. Plaintiff alleges that the female deputy repeatedly yelled for the male deputies to stop hitting the Plaintiff but they continued the assault and eventually thrust Plaintiff's arms behind his back and handcuffed the Plaintiff while he was on the ground and continued the assault despite Plaintiff's pleas that he had an injured back. The deputies ignored the Plaintiff's screams and one of the deputies said: "F**k him, he's lyin!" (Compl. ¶¶ 21-29.)

Finally the female deputy intervened and dispersed the male deputies, leaving Plaintiff lying on the floor in a pool of his own blood with his pants down near his ankles. One of the deputies told Plaintiff to "Shut the f**k up," and then tasered Plaintiff twice while he was face down and not resisting. Plaintiff was unable to stand and walk and several deputies dragged Plaintiff and threw him into an unoccupied cell by the back of his handcuffed arms, face first. Plaintiff repeatedly asked for medical

help but the deputies just laughed and told him to "Shut-up." (Compl. ¶¶ 30-36.)

Plaintiff alleges that "later" several of the assaulting deputies entered his cell with a tape recorder and aggressively put the recorder in Plaintiff's face and told him to say what he was told to say. Plaintiff was to state his name and answer who the current President was and was instructed not to say anything to anyone about the beating. Plaintiff alleges that any statements he made into the recorder were made under duress/coercion and out of fear of further retaliation/assault. One of the deputies took photographs of the Plaintiff and the female deputy entered the cell and said "What the f**k are y'all doing!?" and exclaimed "He's only here for a ticket" and "He really was shot." (Compl. ¶¶ 37-44.)

Plaintiff was removed from the isolated cell and taken back to the booking/processing station to be reprocessed/booked. Plaintiff explained that he had already been booked and asked for medical assistance, which was denied. Plaintiff was told to do the whole process again and was never given medical assistance.

Prior to Plaintiff's release on bond on or about September 14, 2015, he filed a formal grievance complaint with the OCJ detailing the unprovoked assault and noting several violations of his civil rights while a detainee at the OCJ. Plaintiff alleges that to this date, he has never been contacted by OCJ or any official or agent of Oakland County in regard to his Complaint. He alleges that neither Oakland County nor

Sheriff Bouchard took any action whatsoever to investigate the merits of Plaintiff's complaint regarding the physical attack on September 11, 2015 at the OCJ. Plaintiff alleges that the Defendants are uniquely aware of prior allegations of deputy excessive force complaints occurring at OCJ and that by custom, practice, pattern and/or policy, said illegal acts are tolerated and/or condoned. Plaintiff cites at least one similar excessive force case filed in this district, *Lewis v. Manier*, No. 15-cv-10363 (E.D. Mich. Nov. 13, 2015) (Michelson, J.), which indeed alleges strikingly similar facts and was dismissed by stipulation of the parties before summary judgment motions were filed. (Compl. ¶¶ 45-57, 62.) Plaintiff alleges that upon his release from the OCJ, he was taken to Oakwood Hospital Emergency Room and treated for his injuries from the assault. (Compl. ¶¶ 59-60.)

### B. Procedural History

Plaintiff filed his Amended Complaint on September 11, 2018, and asserts the following claims: Count I - 42 U.S.C. § 1983 – Excessive Force/Defendant John Does; Count II - 42 U.S.C. § 1983 – Conspiracy/Defendant John Does; Count III - 42 U.S.C. § 1983 – Defendants Oakland County and Bouchard (failure to train, evaluate, supervise, investigate, review and/or discipline deputies on their use of excessive force). Summonses were issued for Defendants Oakland County and Sheriff Bouchard on September 12, 2018, and on October 10, 2018, and Defendants Oakland

County and Sheriff Bouchard filed the motion to dismiss presently before the Court. The individual John Doe deputy Defendants have not been named or served with process and no appearances have been entered on their behalf. The Court has not yet noticed a Rule 26 Scheduling Conference and discovery has apparently not commenced.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).

To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (quotation marks and

citations omitted).

In other words, a plaintiff must provide more than "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has recently reiterated that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see also Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) ("Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings."). Courts have carved out a narrow exception to this rule, however: a district court ruling on a Rule 12(b)(6) motion "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001)).

## III.   ANALYSIS

### A.   Official Capacity Claims Against Sheriff Bouchard and Any John Doe Defendants in Their Official Capacities Must be Dismissed

The Court will grant the motion to dismiss Sheriff Bouchard because he is clearly named *only* in his official capacity, not his individual capacity, and therefore a suit against him is duplicative of the suit against Oakland County. "An individual-capacity claim is distinct from a claim against a defendant in his official capacity. The former claim may attach personal liability to the government official, whereas the latter may attach liability only to the governmental entity." *Essex v. Cty. of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013) (internal citations omitted) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985)). "In other words, an official-capacity claim is merely another name for a claim against the municipality." *Id.* (internal citations omitted) (citing *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009)); *see also Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (explaining that an action premised on an official-capacity claim "is not a suit against the official but rather is a suit against the official's office") (internal quotation marks omitted) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

Courts within the Sixth Circuit consistently dismiss official-capacity claims

against municipal officials that are duplicative of claims asserted by the plaintiff against the municipal entity itself. *See, e.g., Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996) ("We will . . . affirm the dismissal of the official capacity claims against [three municipal officials] because a suit against an official of the state is treated as a suit against the municipality.") (citing *Graham*, 473 U.S. at 165–66); *Cavanaugh v. McBride*, 33 F. Supp. 3d 840, 848–49 (E.D. Mich. 2014) ("[B]ecause [the plaintiff] has raised claims against Otsego County, the claims against [the county's sheriff and undersheriff] in their official capacities are duplicative and will be dismissed.), *aff'd* (Dec. 12, 2014); *Swartz Ambulance Serv., Inc. v. Genesee Cty.*, 666 F. Supp. 2d 721, 726 (E.D. Mich. 2009) ("[C]laims brought against Genesee Board of Commissioners and individual Commissioners pursuant to 42 U.S.C. § 1983 are duplicative of the claim against Genesee County because official capacity suits are the equivalent of a suit against the municipality.

Accordingly, the Court DISMISSES Sheriff Bouchard and further DISMISSES any claims against the as yet unnamed John Doe Defendants "in their official capacities."  The case continues against the John Doe Defendant deputies, who must be identified and served with the Complaint, in their individual capacities.

## B.    The Municipal Liability Claim Against Oakland County (Count III)

"'A municipality may not be held liable under § 1983 on a respondeat superior theory—in other words, 'solely because it employs a tortfeasor.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *D'Ambrosio v. Marino*, 747 F.3d 378, 388–89 (6th Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "Instead, a plaintiff must show that 'through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.'" *Id.* (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). "A plaintiff does this by showing that the municipality had a 'policy or custom' that caused the violation of his rights." *Id.* (quoting *Monell*, 436 U.S. at 694). "There are four methods of showing the municipality had such a policy or custom: the plaintiff may prove '(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Id.* (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

Count III of Plaintiff's Complaint contains boilerplate language suggesting a claim under the last three of these theories. Plaintiff's Response to the Defendant's motion to dismiss, however, suggests an abandonment of any failure to train or

policymaker ratification claim. Plaintiff's Response to the Defendants' motion to dismiss the municipal liability claim against the County focuses *solely* on a failure to investigate claim. In addition, Plaintiff's counsel filed an Affidavit in support of his Response that also discussed the need for discovery on the details of the assault and *the failure to investigate* the Plaintiff's complaint.[2] The Affidavit does not mention the words "policymaker" or "ratification," and apart from a formulaic recitation of the phrase "failure to train" in a parenthetical in paragraph three, the Affidavit contains no discussion at all of any facts or perceived discovery related to such claims. Accordingly, these two theories of liability are deemed waived. *Humphrey v. U.S. Att'y Gen.'s Office*, 279 F. App'x. 328, 331 (6th Cir. 2008) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion.") (citation omitted) (alteration added). *See also Bazinski v. JPMorgan Chase Bank, N.A.,* No. 13–14337, 2014 WL 1405253, at *2 (E.D. Mich. Apr.11, 2014) ("Claims left to stand undefended against a motion to dismiss are deemed abandoned." (citing cases)). Even had the Plaintiff offered some response on these two theories of municipal liability, the Complaint does

---

[2] This Affidavit is puzzling as it discusses the need for discovery to defeat any claim of "qualified immunity," but the individual Defendants (who haven not yet been named and served) are not moving to dismiss at this point. In any event, with respect to the Plaintiff's claims against the County, the Affidavit clearly focuses only on the Plaintiff's failure to investigate claim.

not contain sufficient factual content to plausibly suggest a claim under either of these theories. The Complaint contains no factual allegations whatsoever regarding the County's training program on the use of excessive force. Nor does the Complaint allege prior instances of inadequate training that put the County on "notice that the training was deficient and likely to cause injury but ignored it." *Jackson v. City of Cleveland*, 925 F.3d 793, 834, 836 (6th Cir. 2019). Plaintiff relies on the *Lewis* case filed in this District as a prior incident having put the County on notice of prior constitutional violations (*see* discussion *infra*), but that case survived a motion to dismiss only on a failure to investigate claim, not on a failure to train claim. Further, the Plaintiff's Complaint contains no allegations that Sheriff Bouchard, as the alleged final policymaker for the County, made a "'deliberate choice to follow a course of action [] from among various alternatives,'" that was "the moving force behind or cause of plaintiff's harm." *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013). The Complaint contains insufficient factual content to plausibly suggest either a failure to train or a "single-act" policymaker ratification claim.

Accordingly, the Court's analysis focuses on Plaintiff's claim that Oakland County had a custom of failing to investigate claims of excessive force. The Court concludes that Plaintiff's Complaint does plausibly suggest "a custom-of-tolerance claim" based upon "a pattern of inadequately investigating similar claims," *Burgess*,

735 F.3d at 478. Plaintiff has alleged sufficient facts entitling him to probe this claim further through discovery.

In his responsive brief, Plaintiff relies principally on *Marchese v. Lucas*, 758 F.3d 181 (6th Cir. 1985), in which the Sixth Circuit found that plaintiff had adequately alleged a claim against the county defendant based upon the sheriff's failure to investigate two brutal beatings of a handcuffed drug addict who had threatened an officer with a gun during a traffic stop. *Id*. at 182-83. The Sixth Circuit noted the "dramatic" facts in *Marchese* involving two separate severe beatings of the plaintiff while he was indisputably defenseless and also noted that the state district court judge, observing the plaintiff's physical condition at his arraignment, ordered the sheriff's representative who was present at the hearing to initiate an investigation, which was never ordered. *Id*. at 184. Plaintiff also relies on *Lewis*, a case filed in this District in which the court found that plaintiff had adequately pled sufficient "*Marchese*-esque allegations" involving a claim of excessive force by deputies at the OCJ to survive a motion to dismiss by Oakland County:

> Given that Lewis's allegations largely mirror the facts of *Marchese*, the Court believes that Lewis has adequately pled a claim against Bouchard and Oakland County. Lewis says that he was severely beaten by nine officers of the Oakland County Jail for no reason (save, perhaps, for not immediately picking up his boots), that he filed a formal complaint with Oakland County and Bouchard about the beating (presumably the entities tasked with handling such a complaint), that he supported his complaint with medical records evidencing his injuries from the beating,

> and that neither Oakland County nor Bouchard responded to his
> complaint or did anything to investigate it. (Am. Compl. ¶¶ 24–28,
> 31–32.) These *Marchese*-esque allegations, coupled with *Iqbal's*
> directive that "plausibility" is not a "probability" requirement, are
> enough to permit Lewis to engage in discovery on his ratification theory.

2015 WL 7075924, at *4. Judge Laurie Michelson observed that Lewis had failed to

allege any prior instances of misconduct, but allowed the municipal liability claim to

move forward on a "single-act" theory of ratification based on allegations that "the

policymaker responsible for investigating major, unconstitutional conduct in fact

concealed it," making it "reasonable to infer that the municipality (through that

policymaking official) has ratified the conduct." *Id*. at *3 (citing *Burgess*, 735 F.3d

at 478-79). Judge Michelson ruled that Lewis could proceed with discovery from the

County only on this limited failure to investigate/single-act ratification theory. Under

such a theory of liability, "a plaintiff does not need to establish a pattern of past

misconduct where the actor was a policymaker with final policymaking authority."

*Burgess*, 735 F.3d at 479. As discussed *supra*, Plaintiff makes no allegations here that

the Sheriff, identified in the Complaint as the final policymaker, "concealed" the

deputies's use of excessive force. In fact, the Plaintiff alleges that he filed his

"grievance complaint with Defendants Oakland County and/or Bouchard, through the

OCJ and/or Oakland County Sheriff's Department." (Compl. ¶ 54.) Unlike the facts

in *Marchese*, in which the judge presiding over the arraignment expressly instructed

the Sheriff to investigate, and the Sheriff chose not to conduct an investigation, there are no facts alleged here directed expressly at Sheriff Bouchard that would plausibly suggest a single-act policymaker ratification claim. *See Burgess*, 735 F.3d at 479 (observing that "on a single-act theory, a plaintiff must demonstrate that a deliberate choice to follow a course of action is made from among various alternatives by the official . . . responsible for establishing final policy with respect to the subject matter in question [and] that course of action must be shown to be the moving force behind or cause of the plaintiff's harm," and finding no evidence that the final policymaker ordered the excessive force or selected a particular course of action that caused the harm to the plaintiff) (internal quotation marks and citation omitted). By contrast, where "the final decision maker ordered deputies to enter the plaintiff's medical clinic in violation of his Fourth Amendment right," or "where Plaintiff alleged that final policymaker directed the destruction of material evidence," such a claim might lie. *Id.* (citations omitted). No such allegations have been made by Plaintiff here.

But what Plaintiff does allege here, which was not alleged in *Lewis*, is a prior incident of nearly identical unprovoked assault by a "team" of Oakland County deputies at the OCJ, i.e. the events alleged in *Lewis*. As Defendant correctly points out, *Marchese* must now be read in light of several cases which have more clearly articulated the requirements for establishing "a custom of *inaction* towards

constitutional violations," which requires plaintiff to demonstrate: "(1) a 'clear and persistent pattern' of misconduct, (2) notice or constructive notice on the part of the municipality, (3) the defendant's tacit approval of the misconduct, and (4) a direct causal link to the violations." *Nouri v. County of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015) (citing *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007)). In *Nouri*, the Sixth Circuit found plaintiff's complaint failed to allege a custom of tolerance based only upon the single incident involving the plaintiff:

> Nouri's complaint is fatally deficient on at least the first and second elements; it simply does not set forth any facts that suggest the Sheriff or County had notice of recurring violations, or even the mistreatment of Nouri himself.
>
> *Leach [v. Shelby v. Shelby Cnty. Sheriff*,] 891 F.2d 1241, 1248 (6th Cir. 1989) is not to the contrary. In that case we upheld a finding of constructive notice, and ultimately a custom of deliberate indifference, based on the indisputable mistreatment of at least fourteen paraplegic inmates. *See Leach*, 891 F.2d at 1247–48. But we have never found notice of a pattern of misconduct (or the pattern itself) solely from the mistreatment of the plaintiff. *See, e.g., Garretson v. City of Madison Heights*, 407 F.3d 789, 795–96 (6th Cir. 2005). To do so risks "collapsing . . . the municipal liability standard into a simple respondeat superior standard." *Thomas v. City of Chattanooga*, 398 F.3d 426, 432–33 (6th Cir. 2005). Here, Nouri provides "no [allegations] of any similar incidents" involving other inmates or "that any such incidents were ever reported to the current, or any former, Sheriff." *Shorts v. Bartholomew*, 255 Fed.Appx. 46, 58 (6th Cir. 2007). He has only his own experience on which to rely, and that is not enough to state a claim against the County.

615 F. App'x at 296. *See also Shorts v. Bartholomew*, 255 F. App'x 46, 57-58 (6th Cir. 2007) (finding insufficient evidence to create a genuine issue of material fact on a claim of failure to investigate where plaintiff produced no evidence that any similar incidents of holding an inmate beyond his date of release had ever been reported to the current or any former sheriff); *Fletcher-Hope v. Louisville-Jefferson County Metro Gov't*, No. 18-cv-00469, 2019 WL 498853, at *4 (W.D. Ky. Feb. 8, 2019) ("Fletcher-Hope's Complaint does not cite or refer to the Metro Government's failure to investigate this or any other incident. Accordingly, she cannot maintain her claim under a custom-of-intolerance theory."); *Horn v. City of Covington*, No. 14-73, 2015 WL 4042154, at *5 (E.D. Ky. July 1, 2015) (finding insufficient allegations of failure to investigate/discipline where plaintiff recited the legal rhetoric but "fail[ed] to cite a single prior instance or statistic in support of those claims").

It is well established in the Sixth Circuit that "[a] plaintiff cannot establish a custom solely by pointing to the facts of his own case." *Payne v. Sevier County, Tenn.*, 681 F. App'x 443, 446 (6th Cir. 2017). But Plaintiff has not relied solely on the facts of his own case here. Here the Plaintiff has alleged in his Complaint that Oakland County was on notice of at least one prior substantially similar incident of a failure to investigate an incident of excessive force by its deputies against the arrestee in *Lewis*. The allegations of the Complaint in *Lewis* detail a similar

unprovoked assault by a "team" of Oakland County Deputies resulting in substantial injuries to Lewis.  2015 WL 7075924, at *1. The plaintiff in *Lewis* also alleged that Lewis filed a complaint with the OCJ regarding the assault, and alleges a similar failure to investigate or to respond in any way to Lewis's complaint. *Id*.  Defendants urge the Court to find little significance in *Lewis* because the case settled.  But of course we have no insight into the terms of that settlement.  Cases settle for many reasons and we do not know the details of the Lewis incident or the resolution of that case. We only know what Plaintiff in this case has alleged in his Complaint, both with respect to his own assault and unaddressed complaint and with respect to the *Lewis* case, all of which we must assume to be true for purposes of resolving this motion to dismiss.

In this case, Plaintiff has alleged a substantially similar incident of excessive force and failure to investigate and we are bound to accept those allegations, and all reasonable inferences from those allegations, as true. The Court expresses no opinion on whether the one similar incident alleged in *Lewis* coupled with Plaintiff's alleged assault could demonstrate a "clear and persistent pattern" of unconstitutional conduct sufficient to put the County on notice or to demonstrate the County's "tacit approval" of that conduct.  "[P]laintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference."

*Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005). The Sixth Circuit has certainly suggested that "several separate instances of the alleged rights violation" would be necessary to demonstrate such a claim. *Id.* at 434. *See also D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) (observing that "[u]ntil the county had notice of persistent misconduct, it did not have 'the opportunity to conform to constitutional dictates,' nor could its inaction have caused the deprivation of D'Ambrosio's constitutional rights," and concluding that the "county cannot have tacitly approved an unconstitutional policy of which it was unaware") (quoting *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1360 (2011)).

But the allegations here, and the reasonable inferences from them, are enough to place Plaintiff's claims into the realm of plausibility and to merit further discovery from the County regarding the possibility of similar incidents and failures to investigate. It is at least plausible to infer, based on the substantially similar incident alleged in *Lewis* that occurred relatively close in time to Plaintiff's alleged assault, that the County could have been on notice that its deputies (possibly some of the same deputies involved in Plaintiff's alleged assault) had engaged in unprovoked attacks on arrestees but failed to investigate complaints, thereby tacitly approving of such conduct with the result that the deputies continued to engage in such unconstitutional conduct confident that there would be no investigation and no discipline. As

Defendants observed in their Reply, such a claim would have to demonstrate that a deputy said to himself "I'm going to assault this inmate *because* I know from past practice that complaints of excessive force are not investigated and I will be able to get away with it." (ECF No. 11, Defs.' Reply 3, PgID 144.) (Emphasis in original.) Plaintiff's Complaint plausibly suggests just this.

Assuming the truth of Plaintiff's allegations, it could be said that the County's "custom of tolerance" caused the violation of his constitutional rights. While a "post hoc" failure to investigate cannot possibly be the moving force behind the alleged assault on the Plaintiff, *see Burgess*, 735 F.3d at 479 (holding that "Fischer's after-the-fact approval of the investigation, which did not itself cause or continue a harm against Burgess, was insufficient to establish the *Monell* claim"), Plaintiff alleges more than that here.

This is a motion to dismiss, not a motion for summary judgment. Plaintiff need only plead sufficient facts to "nudge" his claims over the threshold from possible to plausible. He has done so here and may proceed with discovery on his *Monell* claim against the County *solely* on a custom of tolerance/failure to investigate theory of liability.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Sheriff Bouchard is

GRANTED. Also DISMISSED are any claims against the as yet unnamed individual Defendants in their official capacities. Defendants' Motion to Dismiss Oakland County is DENIED and Plaintiff may proceed with discovery as to the County on his claim of a custom of tolerance claim based on an alleged pattern of inadequately investigating similar claims.

IT IS SO ORDERED.

s/Deborah R. Tofil
Paul D. Borman
United States District Judge

Dated: August 12, 2019