UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUJUAN RODGERS,

                 Plaintiff,               Case No. 18-12832

v.                                    Paul D. Borman
                                    United States District Judge

COUNTY OF OAKLAND, et al.,

                 Defendants.

_____/

## ORDER GRANTING DEFENDANT OAKLAND COUNTY'S MOTION FOR SUMMARY JUDGMENT (ECF No. 43)

**INTRODUCTION**

In this civil rights action filed under 42 U.S.C. § 1983 on September 11, 2018, Plaintiff Dujuan Rodgers claims that he was brutally beaten and tased on or about September 11, 2015, in an unprovoked attack by six Oakland County deputies shortly after being transferred to the Oakland County Jail following his arrest on an open warrant for driving on a suspended license. Plaintiff alleges that prior to his release on bond on September 14, 2015, he filed a formal complaint at the Oakland County Jail specifically detailing the beating incident, but that he has never been contacted regarding his complaint, which he alleges was never investigated by Oakland County or Sheriff Michael Bouchard. The Court previously dismissed

1

Plaintiff's claims against Sheriff Bouchard and the unnamed individual defendants in their official capacities, but permitted Plaintiff's claims against Oakland County and against the unnamed John Doe deputy defendants in their individual capacities to continue. Now before the Court is Defendant Oakland County's Motion for Summary Judgment (ECF No. 43).

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Statement of Facts

On September 10, 2015, Plaintiff was arrested, booked/processed, and detained at the Southfield Police Department, on an open warrant for failure to appear on a DWLS (driving while license suspended) ticket. (ECF No. 43-2, Deposition of Dujuan Rodgers ("Rodgers Dep.") at pp. 16–17, PageID.472–73.) Plaintiff was transported to the Oakland County Jail (OCJ) by Oakland County Sheriff's Department agents/officials on September 11, 2015. (*Id.* at p. 17, PageID.473.) Once at the OCJ, during the booking process, some of the deputies used force on Plaintiff, which Plaintiff alleges was excessive and unprovoked. (*Id.* at p. 30, PageID.486.) Specifically, Plaintiff claims he saw a group of at least six deputies coming aggressively toward him as he stood at the counter, and that at least six deputies then began to punch, kick, and stomp Plaintiff onto the ground; brutally

2

assaulting him over and above his pleas that he had an injured back and ignoring his screams for help. (*Id.* at pp. 50–51, PageID.506–07.) Plaintiff states that he was tased twice while he was face down, with his hands behind his back and not resisting. (*Id.* at pp. 44, PageID.500.) He claims that he was then handcuffed behind his back, put in a headlock, picked up by the deputies, and carried to a single-person cell, where he was pushed down to the floor, face first. (*Id.* at pp. 55–56, 59–61, PageID.511–12, 515–17.) Plaintiff alleges that the entire incident was captured on the OCJ video monitoring system. (See ECF No. 53-1, OCJ Video.)

Plaintiff requested medical assistance when he was in the cell, and he states that several nurses responded and came to the cell, but he claims they only asked him a couple of questions and then left without providing medical care to him. (Rodgers Dep. at pp. 62–63, 75–76, PageID.518–19, 531–32.) (OCJ Video) (ECF No. 53-17, Nurse Progress Notes, PageID.1101–04.) Plaintiff further claims that several of the assaulting deputies entered his cell with a tape recorder and one of them put the recorder in Plaintiff's face and told him to say what he was told to say—to state his name—and not to say anything else. (Rodgers Dep. at pp. 64–65, PageID.520–21.)

Prior to Plaintiff's release on bond on or about September 14, 2015, Plaintiff states that he submitted a grievance complaint to a deputy with the OCJ detailing the

3

assault and noting several violations of his civil rights while a detainee at the OCJ. (Rodgers Dep. at pp. 81–85, PageID.537–41.) Plaintiff states that he does not know what happened to his grievance after a deputy picked it up, but claims that he has never been contacted by OCJ or any official or agent of Oakland County in regard to his grievance. (*Id*. at pp. 84–86, PageID.540–42.)[1] Plaintiff states that, upon his release from the OCJ, he was picked up by a friend and they went to the Oakwood Hospital Emergency Room, where Plaintiff was treated for his injuries from the assault. (*Id*. at pp. 89–91, PageID.545–47.)

Plaintiff claims that Oakland County failed to take any meaningful action to investigate the merits of his complaint regarding the physical attack on September 11, 2015 at the OCJ. (Rodgers Dep. at pp. 118–19, 121, PageID.574–75, 577.) Plaintiff did not try to check up on his complaint, or to file another complaint after

---

[1] Plaintiff refers to two exhibits, among others, in support of his assertion that he submitted a grievance, but Oakland County failed to take any "meaningful action" to investigate his complaint. (Pl.'s Resp. PageID.1388, citing Ex. K, ECF No. 53-39, a purported undated letter from Bryan Rashad Jones, an OCJ inmate, and Ex. L, ECF No. 55-1, "Summary of Deposition Testimony of Defendant Designated Deponent FRCP 30(b)(6) Witness (Lt. Vida).) Defendant objects to both exhibits, contending that Ex. K – "Letter", appears to be an unsworn, unauthenticated, and undated letter from another inmate that includes the heading, "Let's team up to win money," and that both Ex. K. and Ex. L are inadmissible hearsay. (Def.'s Reply PageID.1409–10.) The Court will disregard both exhibits. The undated, unsworn, unauthenticated letter, from a non-party to Plaintiff, at Ex. K is inadmissible hearsay. And Lt. Vida's deposition transcript is already included as an exhibit to Defendant's motion for summary judgment.

he left the jail, until he filed the instant lawsuit three years later. (*Id*. at p. 86, PageID.542.)

Thomas Vida, a Lieutenant with the Oakland County Sheriff's Office, who was Defendant's witness pursuant to Federal Rule of Civil Procedure 30(b)(6), explained the Sheriff's Office's process for reviewing and investigating use of force incidents. (ECF No. 43-3, Deposition of Thomas Vida (Vida Dep.), pp. 99–101, PageID.679–81.) He explained that whenever force is used on an inmate, deputies must complete a "use of force" form. The purpose of having deputies complete the form is to document the incident, track each deputy's use of force, and monitor for any policy violations. (*Id.*) Supervisors review every use of force form, regardless of whether there was a citizen complaint or an inmate grievance filed. (*Id.* at pp. 16–18, 23–24, PageID.596–98, 603–04.) The supervisor reviews the "totality" of the incident, including the video, reports, and medical documents, if any. (*Id.* at p. 15, PageID.595.) If there is something unusual about the form (for example, the information that the deputy provides on the form does not match what the supervisor observes on the video), then the supervisor will initiate a more in-depth "line investigation" and/or forward it to internal affairs for a "special investigation" if criminality is suspected. (*Id.* at pp. 26–27, PageID.606–07) Lt. Vida testified that line investigations and/or special investigations conducted by the internal affairs unit

5

also occur whenever the Sheriff's Office receives a citizen complaint or inmate grievance about an incident. (*Id.* at pp. 74–75, 80, PageID.654–55, 660.)

Lt. Vida testified that he is aware of "numerous" instances where supervisors reviewed a use of force form and then initiated a line investigation and/or special investigation. (*Id.* at pp. 101–03, PageID.681–83.) He is also aware of deputies being disciplined as a result of those investigations, with discipline ranging from a one-day suspension to termination and criminal charges, depending on the facts of the incident. (*Id.*)

Lt. Vida testified that, regarding the use-of-force incident involving Plaintiff, the deputies involved each filled out use of force forms. (*Id.* at pp. 13–15, 24–27, PageID.593–95, 604–07.) (*See also* ECF No. 53-19, Use of Force Forms/Incident Report, PageID.1136–51.) These forms were reviewed by the training unit and two supervisors at the jail, the first supervisor met with the individual deputies, and the supervisors signed off on the incident. (*Id.*) However, according to Lt. Vida, had the supervisors determined that the incident needed further investigation, then the matter would have been forwarded up the chain of command to initiate an additional investigation. (Vida Dep. at pp. 23–27, PageID.603–07.)

Lt. Vida also provided testimony regarding the use-of-force incident involving Arthur Lee Lewis, which Plaintiff refers to in his complaint. (ECF No. 43-

6

4, Deposition of Thomas Vida dated February 2, 2017 (Vida Dep. - Lewis).) Lt. Vida

explained that Mr. Lewis submitted a citizen complaint to the Sheriff's Office

alleging excessive force on February 15, 2013. (*Id.* at p. 10, PageID.698.) Lt. Vida

conducted a line investigation of that complaint to determine whether the deputies

involved committed any policy violations. (*Id.*) This investigation included

reviewing the incident report, contacting Mr. Lewis to discuss the incident with him,

reviewing the video, speaking with the deputies involved, interviewing four inmates

who witnessed the incident, and interviewing a jail nurse who saw Mr. Lewis after

the incident. (*Id.* at pp. 12, 15–16, PageID.700, 703–04.) Mr. Lewis was criminally

charged as a result of the incident and found guilty of resisting and obstructing a

police officer. (*Id.* at pp. 9–10, PageID.697–98) (ECF No. 43-5, Lewis' Judgment of

Sentence and Verdict Form in criminal case, PageID.748–50.) Mr. Lewis

subsequently brought a civil lawsuit related to the incident, which was ultimately

settled. (Stipulated Order of Dismissal, *Lewis v. Manier*, Case No. 15-10363 (E.D.

Mich. May 26, 2017), ECF No. 31.)

**B.    Procedural History**

On September 11, 2018, Plaintiff filed this lawsuit, naming as defendants

Oakland County, six "John Doe" deputies in their "official and individual"

capacities, and Sheriff Michael Bouchard in his official capacity. (ECF No. 1,

7

Complaint.) Plaintiff filed an Amended Complaint that same day. (ECF No. 2, First Amended Complaint (FAC).) Plaintiff's FAC has three counts: Count I, 42 U.S.C. § 1983—Excessive Force, against the individual "John Doe" defendants; Count II, 42 U.S.C. § 1983—Conspiracy, against the individual "John Doe" defendants; and Count III—Violation of 42 U.S.C. § 1983, against Defendants Oakland County and Sheriff Bouchard. (FAC, PageID.29–32.)

On October 10, 2018, Defendants Oakland County and Sheriff Bouchard moved to dismiss the FAC, arguing that: (1) the claims against Sheriff Bouchard in his official capacity are duplicative of the claims against the County, and (2) the FAC fails to plausibly allege a municipal liability claim against Oakland County. (ECF No. 6, Defs.' Mot. to Dismiss.)

On August 12, 2019, the Court issued its Opinion and Order granting in part and denying in part Defendants' motion to dismiss. (ECF No. 17, Opinion and Order.) The Court dismissed Plaintiff's claims against Sheriff Bouchard, as well as any claims against the yet unnamed individual "John Doe" defendants in their official capacities, finding that those claims were duplicative of the suit against Oakland County. The Court allowed Plaintiff to proceed with his claims against the unnamed deputy defendants in their individual capacities, and with his *Monell*[2] claim

---

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

against the County, but limited to a claim of a custom of tolerance/failure to investigate theory of liability.

### C.    Defendant's Motion for Summary Judgment

Following the close of discovery, Defendant Oakland County filed a motion for summary judgment. (ECF No. 43, Def.'s Mot.) Defendant asserts that Plaintiff's claims against the "John Doe" deputies in their individual capacities must be dismissed because he never moved to amend his complaint to identify an actual person and serve them with a summons and complaint, and the statute of limitations has expired on his potential claims against those defendants. Therefore, the sole remaining claim is a *Monell* claim against Oakland County based on a custom of tolerance/failure to investigate theory of liability. Defendant argues that this claim fails because Plaintiff cannot establish a persistent pattern of earlier violations sufficient to show the type of deliberate indifference necessary to prove that the County tolerated or had a custom of inaction regarding the use of excessive force. Rather, Plaintiff alleges only a single, earlier failure-to-investigate/custom-of-tolerance excessive force incident that is not similar to Plaintiff's incident and that occurred two years before Plaintiff's incident.

Plaintiff filed a Response in opposition to Defendant's motion. (ECF No. 57, Pl.'s Resp.) Plaintiff contends that Defendant's motion should be denied because

9

Oakland County failed to follow its written policy requiring an investigation when an inmate is assaulted and requires medical care with regard to Plaintiff's incident. Plaintiff further asserts that "[n]o pattern is needed, where a practice, custom and/or policy so obviously can lead to constitutional deprivations if continued[.]"

Defendant filed a Reply in support of its motion, contending that it is entitled to summary judgment because Plaintiff focuses exclusively on his own case and offers no facts to suggest that there is a pattern of inadequate investigations at the OCJ, and that multiple prior instances are required to establish a *Monell* claim based on a theory of inadequate investigations. (ECF No. 58, Def.'s Reply.)

## II.   LEGAL STANDARD

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and

citations omitted). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). That evidence must be capable of presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

## III.   ANALYSIS

### A.   The individual "John Doe" defendants are dismissed.

Plaintiff named as defendants six "John Doe" deputies in their "official and individual" capacities. (FAC ¶ 5, PageID.19–20.)[3] Defendant contends in its Motion

---

[3]   Following the Court's ruling on Defendants' motion to dismiss, and the filing of Defendants' Answer, Plaintiff filed a Second Amended Complaint on September 3, 2019 (ECF No. 23), and then a Third Amended Complaint on September 17, 2019 (ECF No. 24). In both of these amended complaints, Plaintiff lists eight "John Doe" defendants, and also asserts a fourth claim against the "John Doe" defendants, Count IV—Deliberate Indifference to Serious Medical Needs. (ECF Nos. 23, 24.)

However, Plaintiff had already filed one amended complaint in this case "as a matter of course" on September 11, 2019 (ECF No. 2, FAC), and he did not seek leave of the Court by motion to file either the Second or Third Amended Complaints. *See* Fed. R. Civ. P. 15(a)(1), (2) ("A party may amend its pleading once as a matter of course …. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."). Accordingly, Plaintiff's first Amended Complaint (ECF No. 2) is the operative pleading in this case. *See Day v. Onstar, LLC*, No. 19-10922, 2019 WL 3322437, *1 (E.D. Mich. July 3, 2019) (noting that Rule 15 "allows an amended complaint to be filed as a matter of course

for Summary Judgment that Plaintiff never moved to amend his complaint to identify an actual person and serve them with a summons and complaint, and the statute of limitations on Plaintiff's § 1983 claims has expired and thus precludes Plaintiff from amending the complaint to name any specific individuals. (Def.'s Mot. at p. 2 & fn. 1, PageID.435, citing *Cox v. Treadway*, 75 F.3d 230 (6th Cir. 1996) ("It is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations, because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued."); *see id.* PageID.445.) Defendant argues that because this Court has previously dismissed all claims against Sheriff Bouchard and the "John Doe" deputies in their official capacities in its Opinion and Order Granting in Part and Denying in Part Motion to Dismiss (ECF No. 17), and because Plaintiff never identified an actual person in place of any of the "John Doe" deputy defendants, which claims are now barred by limitations, the sole remaining claim in this lawsuit is a *Monell* claim against Oakland County. (*Id.*)

---

only 'once'"), *report and recommendation adopted by* 2019 WL 3315278 (E.D. Mich. July 24, 2019), *aff'd* 2019 WL 7811329 (6th Cir. Dec. 18, 2019); *see also United States v. EV3, Inc.*, 802 F.3d 188, 193 (1st Cir. 2015) ("We hold, without serious question, that a plaintiff may amend a complaint only once as a matter of course under Rule 15(a)(1)."); *Bennett v. Langford*, 796 F. App'x 564, 566–67 (11th Cir. 2019) (same).

In any event, Plaintiff fails to identify any actual person in place of the "John Doe" deputy defendants in either the Second or Third Amended Complaints. Accordingly, the Court's analysis would apply equally to those amended complaints.

Plaintiff does not address this argument in his Response. He instead improperly labels Defendant's motion as a "partial" summary judgment motion. (See Pl.'s Resp. at PageID.1372, 1382.) Plaintiff admits, however, that he "never moved to amend his complaint to identify an actual person [in place of the "John Doe" defendants] and serve them with a summons and complaint." (*Id.* at PageID.1376.)

It is undisputed that the statute of limitations has expired with regard to any claims Plaintiff may have had against these "John Doe" defendants regarding their alleged use of excessive force against Plaintiff on September 11, 2015. The statute of limitations for claims under 42 U.S.C. § 1983 is established with reference to the statute of limitations for personal injury claims in the state where the case arises. *Wilson v. Garcia*, 471 U.S. 261, 272 (1985). In Michigan, the statute of limitations for personal injury claims is three years. *See* MCL § 600.5805(10). "Under federal law the statute begins to run when plaintiffs knew or should have known of the injury which forms the basis of their claims." *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). In the present case, therefore, the Plaintiff's Fourth Amendment/excessive force claims accrued on September 11, 2015, and the statute of limitations on those claims ran three years later, on September 11, 2018.

The Sixth Circuit has repeatedly held that where the original complaint refers to unnamed defendants, or "John Doe" defendants, that naming of "unknown police officers" does not save the pleadings or toll limitations. *See Cox*, 75 F.3d at 240. "Substituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties," and "new parties may not be added after the statute of limitations has run[.]" *Id.*; *see also Brown v. Cuyahoga Cnty., Ohio*, 517 F. App'x 431, 433–34 (6th Cir. 2013); *Wiggins v. Kimberly-Clark Corp.*, 641 F. App'x 545, 549 (6th Cir. 2016); *see also Reiner v. Canale*, 301 F. Supp. 3d 727, 737 (E.D. Mich. 2018) (collecting cases).

In this case, the three-year statute of limitations on Plaintiff's claims ran on September 11, 2018, and he never identified any person in place of the "John Doe" defendants prior to that date, or at any time. Accordingly, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claims against the "John Doe" defendants, and that Counts I and II of the FAC are dismissed with prejudice.

**B.      Defendant Oakland County is entitled to summary judgment.**

Plaintiff asserts one claim against Defendant Oakland County for violation of 42 U.S.C. § 1983. (FAC, Count III, PageID.30–32.)[4] "'A municipality may not be

---

[4] Plaintiff asserts a similar Count III against Oakland County in the Second and Third Amended Complaints.

held liable under § 1983 on a respondeat superior theory – in other words, 'solely because it employs a tortfeasor.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *D'Ambrosio v. Marino*, 747 F.3d 378, 388–89 (6th Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978))). "Instead, a plaintiff must show that 'through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" *Id.* (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997))). "A plaintiff does this by showing that the municipality had a 'policy or custom' that caused the violation of his rights." *Id.* (quoting *Monell*, 436 U.S. at 694). "There are four methods of showing the municipality had such a policy or custom: the plaintiff may prove '(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Id.* (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

When ruling on Defendants' motion to dismiss, this Court found that Plaintiff's Complaint did not assert a claim based on the existence of an illegal or official policy or legislative enactment, and that Plaintiff waived or abandoned any

failure to train or policymaker ratification claims. (Opinion and Order, PageID.165–66.) The Court allowed Plaintiff's claim against Oakland County—that the County had a custom or policy of failing to investigate claims of excessive force—to proceed "*solely* on a custom of tolerance/failure to investigate theory of liability." (*Id.* PageID.175 (emphasis in original).) The Court explained that this claim could move to discovery because Plaintiff alleged in his FAC one similar incident which, he claimed, was not properly investigated: *Lewis v. Manier*, No. 15-cv-10363 (E.D. Mich. Nov. 13, 2015) (Michelson, J.). The Court reasoned that Plaintiff had at least plausibly alleged a "custom of *inaction* toward constitutional violations." The Court acknowledged that Plaintiff cannot establish a custom or policy "solely by pointing to the facts of his own case," and expressed "no opinion on whether the one similar incident alleged in *Lewis* coupled with Plaintiff's alleged assault could demonstrate a 'clear and persistent pattern' of unconstitutional conduct sufficient to put the County on notice or to demonstrate the County's 'tacit approval' of that conduct" to survive a motion for summary judgment. (*Id.* PageID.172–73.) The Court instead found that "the allegations here, and the reasonable inferences from them, are enough to place Plaintiff's claims into the realm of plausibility and to merit further discovery from the County regarding the possibility of similar incidents and failures to investigate." (*Id.* PageID.174.)

17

The parties have since engaged in considerable discovery, and Defendant Oakland County now moves for summary judgment and dismissal of this case. Defendant argues that the *Lewis* incident is not sufficiently similar to Plaintiff's incident to suggest a pattern to support his *Monell* claim, and that, even if it was, this one prior incident that occurred two years before Plaintiff's incident "does not a pattern make."

> **1.** **Plaintiff's claim based on the existence of an illegal official policy or legislative enactment fails.**

Despite the Court's ruling on Defendant's motion to dismiss that Plaintiff could proceed against Oakland County "*solely* on a custom of tolerance/failure to investigate theory of liability," (Opinion & Order, PageID.175 (emphasis in original)), and despite Plaintiff's failure to plead the existence of any illegal official policy in the FAC, Plaintiff now claims in his Response brief that he "do[es] challenge 'a single, particular county policy.'" (Pl.'s Resp. at PageID.1392.)[5] Plaintiff asserts in his Response that "the Defendant through its Sheriff's Department, has a policy that mandates investigation of any incident resulting in injury to an inmate, requiring medical attention, which may have been caused by a

---

[5] In footnote 11 of Plaintiff's Response, he cites to two pages in the FAC for support of this claim, PageID.8, 28. (Pl.'s Resp. PageID.1392.) However, neither of those pages contains any allegation of an illegal official policy or legislative enactment of Oakland County. (See Pl.'s Resp. PageID.1392.)

criminal act." (*Id.* PageID.1393, citing generally ECF No. 53-7, 53-8, Oakland County Sheriff's Office Policies and Procedures—Jail Investigations.) However, Plaintiff does not argue that this Sheriff's Policy is *illegal*. Rather, he argues that, "*contrary to* that written policy, the Defendant investigating command officers (at least 4–5 levels) failed to conduct an adequate investigation and instead chose to accept the involved deputies['] *self-serving* version of events (blindly-ignoring all other relevant evidence) as provided for in their excessive force/incident reports --- as the 'gospel truth.'" (Pl.'s Resp. at PageID.1394 (first emphasis added, second emphasis in original).) In essence, Plaintiff is asserting a *respondeat superior* liability claim against the County, for their employees allegedly acting "contrary to that written policy." This is not allowed. *Jackson*, 925 F.3d at 828 ("A municipality may not be held liable under § 1983 on a *respondeat superior* theory[.]") (citation omitted).

Accordingly, the Court finds that Plaintiff fails to state a claim against Oakland County based on an alleged illegal official policy or legislative enactment.

### 2.    Plaintiff's claim based on custom of tolerance/failure to investigate fails.

This Court ruled on Defendant's motion to dismiss that Plaintiff could proceed against Oakland County "*solely* on a custom of tolerance/failure to investigate theory of liability." (Opinion & Order, PageID.175 (emphasis in original).) A "custom of

*inaction* towards constitutional violations" claim, as in this case, requires plaintiffs to demonstrate: (1) a clear and persistent pattern of misconduct, (2) notice or constructive notice of such pattern to the municipality, (3) the defendant's tacit approval of the misconduct, such that their deliberate indifference in their failure to act amounts to an official policy of inaction, and (4) a direct causal link to the violations. *Nouri v. Cnty. of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015) (citing *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007)).

A "custom of tolerance" claim cannot be based only upon the single incident involving the plaintiff, because "[t]o do so risks 'collapsing … the municipal liability standard into a simple *respondeat superior* standard.'" *Nouri*, 615 F. App'x at 296 (explaining Nouri's claim fails because he provides "no [allegations] of any similar incidents" involving other inmates or "that any such incidents were ever reported to the current, or any former, Sheriff") (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 432–33 (6th Cir. 2005). The "deliberate indifference" in this context is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Garretson v. City of Madison Heights*, 407 F.3d 789, 795 (6th Cir. 2005) (citation omitted). This standard requires "multiple earlier inadequate investigations" of "comparable claims" to establish a "'link

between' the local entity's failure to investigate and the plaintiff's injury." *Pineda*

*v. Hamilton Cnty.*, 977 F.3d 483, 495 (6th Cir. 2020) (citation omitted).

### a. The Lewis incident is not sufficiently similar to Plaintiff's incident to support his *Monell* claim.

A custom-of-tolerance claim requires a showing that there was a pattern of

inadequately investigating similar claims. *See Thomas,* 398 F.3d at 433; *Leach v.*

*Shelby Cnty. Sheriff,* 891 F.2d 1241, 1248 (6th Cir. 1989). Where a plaintiff fails to

set forth any facts that there were prior instances of similar misconduct, "they simply

have not demonstrated a pattern of inadequate investigation of similar claims as

required." *Burgess*, 735 F.3d at 478–79.

Plaintiff seemingly relies in his FAC on one other incident to support his claim

against the County: the Lewis incident. (See FAC PageID.28, 32.) Plaintiff,

however, fails to discuss the Lewis incident in the body of his Response brief in

support of his claim against Oakland County, much less argue that the Lewis incident

is similar to his own. Rather, the only mention of Mr. Lewis is in Plaintiff's response

to Defendant's statement of material facts not in dispute, where he "[a]dmit[s] that

defense counsel has summarized Mr. Lewis' Judgment of Sentence, but den[ies] the

context as implied," and "[a]dmit[s] that because the multiple deputies involved in

the Lewis assault, were entirely different from the 8–10 deputies involved in the

Rodgers assault, there is the appearance of tolerance, acquiesce [sic], or tacit

21

authorization of inadequate investigations that certainly guarantee repeated impunity of deputies." (See Pl.'s Resp. PageID.1375–76.)

Defendant contends that certain important facts about the Lewis incident distinguish it from Plaintiff's incident. First, contrary to the sole factual predicate to Plaintiff's complaint (that the Lewis case was not investigated), the Sheriff's Office thoroughly investigated Lewis's complaint, including by contacting Lewis directly to discuss the incident with him, reviewing the video evidence, speaking with the deputies involved, interviewing four other inmates who witnessed the incident, and interviewing a jail nurse after the incident. (Vida Dep. – Lewis, at pp. 12, 15–16, PageID.700, 703–04.) Further, contrary to Plaintiff's allegation that both his and the Lewis use of force incidents were "unprovoked," the Lewis incident stemmed from active resistance that resulted in Mr. Lewis being criminally charged and convicted of resisting and obstructing. (*Id.* at pp. 9–10, PageID.697–98) (Lewis' Judgment of Sentence and Verdict Form in criminal case, PageID.748–50.) Finally, Plaintiff admits that the multiple deputies involved in the Lewis incident were entirely different from the deputies involved in his incident. (Pl.'s Resp. at PageID.1376–76.)

As this Court recognized in its Opinion and Order on Defendant's motion to dismiss, Plaintiff's claim against the County in this case only works if he can prove

that a deputy said to himself, "I'm going to assault this inmate *because* I know from past practice that complaints of excessive force are not investigated and I will be able to get away with it." (Opinion & Order, PageID.175.) The evidence regarding the Lewis incident proves otherwise. Plaintiff fails to address this argument in his Response, and thus he has waived any such opposition. *See Mahindra & Mahindra, Ltd. v. FCA US, LLC*, 503 F. Supp. 3d 542, 554 (E.D. Mich. 2020) (holding that moving party was entitled to summary judgment on a claim where the non-moving party failed to substantively respond to moving party's arguments seeking summary judgment on the claim); *Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 737 (E.D. Mich. 2013) (explaining that failure to respond to movant's summary judgment argument "is grounds for the court to deem opposition waived").

Accordingly, the Court finds that Plaintiff has failed to establish that the Lewis incident is sufficiently similar to his incident to support his *Monell* claim against the County.

> **b.** **Plaintiff has not established a pattern of inadequate investigations, and his argument that he need not establish such a pattern fails.**

Even if the Lewis incident was similar enough to Plaintiff's incident to be considered, the Court finds that this single prior incident, which occurred over two

years before Plaintiff's incident, is insufficient to establish a valid *Monell* claim to survive summary judgment.

As explained above, a *Monell* claim based on a "custom-of-tolerance/failure to investigate" theory requires a showing that there was a pattern of inadequately investigating similar claims. *Burgess*, 735 F.3d at 478. The Sixth Circuit in *Pineda*, 977 F.3d 483, recognized that, to prevail on a custom-of-tolerance claim, a plaintiff must show there were multiple earlier instances of inadequately investigating similar claims:

> Because municipal liability requires an unconstitutional "policy" or "custom," we have held that an allegation of a *single* failure to investigate a single plaintiff's claim does not suffice. As a result, "a claim based on inadequate investigation" requires "not only an inadequate investigation in this instance," but also "a clear and persistent pattern of violations" in earlier instances. That is, there must be multiple earlier inadequate investigations and they must concern comparable claims."

*Id*. at 495 (emphasis in original, internal and end citations omitted). The *Pineda* Court explained that:

> This requirement (that there be multiple failures to investigate) also follows from § 1983's causation element. To protect against *respondeat superior* liability, the Supreme Court has held that § 1983 imposes a "rigorous" causation standard where, as here, a plaintiff seeks to hold a local entity liable for its employee's actions. A plaintiff must show that the *entity's* unconstitutional custom – not just the *employee's* unconstitutional action – caused the plaintiff's injury."

*Id*. (emphasis in original, internal and end citations omitted).

24

For example, in *Leach v. Shelby Cnty. Sheriff,* 891 F.2d 1241, 1247 (6th Cir.1989), the Court found a pattern sufficient to allow the plaintiff to move forward with his custom-of-tolerance claim when "there was a record of approximately 14 other instances of similar abuse in a two-year period" before the plaintiff's incident. On the other hand, numerous courts have rejected a custom-of-tolerance theory of liability when there are only two or three prior instances of similar conduct. *See Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 701 (6th Cir. 2006) (two prior incidents over a two-year period did not establish a pattern for purposes of municipal liability); *Boyd v. City of Warren*, No. 16-cv-12741, 2018 WL 1835704, at *2 (E.D. Mich. Apr. 18, 2018) (even assuming three prior incidents of excessive force were sufficiently similar, "three does not a pattern make"); *Cretacci v. Hare*, No. 4:19-CV-55-SKL, 2021 WL 202997, at *9 (E.D. Tenn. Jan. 20, 2021) (finding "three incidents are insufficient to establish a persistent pattern of earlier violations sufficient to show the type of deliberate indifference necessary for proving the County tolerated or had a custom of inaction regarding the use of excessive force"); *Stone v. City of Grand Junction*, 765 F. Supp. 2d 1060, 1073 (E.D. Tenn. 2011) (three incidents in two-month period of time not sufficient for *Monell* liability); *Burbridge v. City of St. Louis*, 430 F. Supp. 3d 595, 620–21 (E.D. Mo. 2019) ("Without determining exactly how many instances would suffice to show a

pattern of misconduct, … the Court finds that two or three incidents, occurring nearly a year apart and two years before any of the events at issue in this case, do not constitute a 'continuing, widespread, persistent pattern.'") (citation omitted).

Defendant argues that Plaintiff lacks sufficient evidence for his custom-of-tolerance/failure to investigate claim because he alleges, at best, only a single earlier incident that occurred two years before his incident, which is insufficient, as a matter of law, to establish a pattern.

In response, Plaintiff does not argue that the Lewis incident establishes a pattern, or that there are any other alleged instances of inadequate investigation that could establish a pattern. He instead contends that "[n]o pattern is needed, where a practice, custom and/or policy *so obviously* can lead to constitutional deprivations if continued…." (See Pl.'s Resp. at PageID. 1403 (emphasis in original).) Plaintiff seems to be arguing that this is a "single-incident" claim, to show that the County was deliberately indifferent to the likelihood of harm that would result from the allegedly inadequate investigation. However, this Court found when ruling on Plaintiff's motion to dismiss that:

> Plaintiff's Complaint contains no allegations that Sheriff Bouchard, as the alleged final policymaker for the County, made a "deliberate choice to follow a course of action [] from among various alternatives," that was the "moving force behind or cause of plaintiff's harm." *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013). The Complaint contains

> insufficient factual content to plausibly suggest either a failure to train or a "single-act" policymaker ratification claim.

(Opinion and Order, PageID.167.) Further, the out-of-district, out-of-circuit cases Plaintiff relies on in his Response, *Clark v. Pena*, No. 1:99-CV-277, 2000 WL 35427177, at *6–7 (W.D. Mich. Apr. 28, 2000); *Fiacco v. City of Rensselaer*, 783 F.2d 319, 3303–31 (2d Cir. 1986); and *Parrish v. Luckie*, 963 F.2d 201, 205 (8th Cir. 1992), all included evidence of prior and additional complaints of inadequate investigation, in addition to the plaintiffs' own complaints, and thus these cases do not support Plaintiff's argument that he can establish a claim against the County based solely on his alleged incident.[6]

Rather, the Sixth Circuit has rejected similar claims by plaintiffs, finding that such "after-the-fact approval of the investigation, which did not itself cause or continue a harm against [the plaintiff], was insufficient to establish the *Monell* claim." *Burgess*, 735 F.3d at 479; *Pineda* 977 F.3d at 496 (rejecting such a claim because "Pineda has still provided no basis for concluding that any failure to

---

[6] Plaintiff's counsel also cited *Connick v. Thompson*, 563 U.S. 51 (2011), at oral argument. But that case does not support his argument either. In *Connick*, the Supreme Court recognized only that "the unconstitutional consequences of failing *to train* could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64 (emphasis added). This statement has no bearing on the alleged failure *to investigate* alleged here.

investigate his own claim caused his earlier injury"). The courts reason that "a contrary holding 'would effectively make the [sheriff's office] liable on the basis of *respondeat superior*, which is specifically prohibited by *Monell*.'" *Pineda*, 977 F.3d at 496 (citing *Burgess,* 735 F.3d at 479; *Smith v. City of Troy*, 874 F.3d 938, 947 (6th Cir. 2017)).

In this case, Plaintiff "only has [*his*] experience on which to rely, and that is not enough to state a claim against [Oakland County]." *Nouri*, 615 F. App'x at 296; *see also Burgess*, 735 F.3d at 478–79 (holding that, because plaintiffs failed to set forth any facts that there were prior instances of similar misconduct, "they simply ha[d] not demonstrated a pattern of inadequate investigation of similar claims as required"); *Wilber v. Cnty. of Jackson*, No. 13-cv-14524, 2016 WL 892800, at *10 (E.D. Mich. Mar. 9, 2016) (dismissing *Monell* claim where plaintiff failed to identify any prior incidents of deliberate indifference involving *other prisoners*). Simply put, a single instance is not a "clear and persistent pattern." *Winkler v. Madison Cnty.*, 893 F.3d 877, 902 (6th Cir. 2018).

Accordingly, the Court grants Defendant summary judgment on Plaintiff's claim against Oakland County.

**CONCLUSION**

For the reasons discussed above, Defendant's motion for summary judgment is **GRANTED.**


**IT IS SO ORDERED.**


|  | s/Paul D. Borman |
| --- | --- |
| Dated: November 12, 2021 | Paul D. Borman |
|  | United States District Judge |